United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOOPAL DIGITAL LIMITED, et al.,
Plaintiffs,
v.
FRED JIN, et al.,
Defendants.

Case No. 26-cv-00857-LJC

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING CASE, VACATING SEPTEMBER 24, 2026 CASE MANAGEMENT CONFERENCE, AND REQUIRING PERIODIC STATUS REPORTS**

Re: Dkt. No. 43

Before the Court is Defendants Fred Jin, Brad Bao, Maren Schwarzer, Xin Jin, Martijn Broersma, Francois Granade, Cerebellum Network, Inc., Interdata Network Ltd, and CEF AI Inc.'s Petition to Compel Arbitration and Stay the Action. ECF No. 43. The matter is fully briefed, and a hearing was held on July 20, 2026. *See* ECF Nos. 45, 46, 52. Having considered the record in this case, the relevant legal standards, and the parties' arguments, the Court GRANTS Defendants motion to compel arbitration and STAYS the case pending arbitration.[1]

[1] Defendants and Plaintiff also request that the Court take judicial notice various documents filed with their petition and opposition, respectively. ECF Nos. 43-2, 45-2. Federal Rule of Evidence 201(b) permits courts to take judicial notice of facts that are not subject to reasonable dispute. The Court takes judicial notice of Defendants' Exhibits 1 (Cerebellum Network Inc.'s certificate of incorporation) and 2 (Cerebellum Network Inc.'s bylaws), as these documents' accuracy cannot reasonably be questioned. *See Coal. for a Sustainable Delta v. F.E.M.A.*, 711 F. Supp. 2d 1152, 1170 n.5 (E.D. Cal. 2010). The Court likewise takes judicial notice of Plaintiff's two exhibits, both search results from government Secretaries of State websites showing that searches for "Cere Network" do not yield results. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of the "results of records searches from the Secretary of State for the State of California corporate search website"). The Court takes judicial notice of Defendants' Exhibits 5 through 9, which are filings in other proceedings pending in front of Judge Donato. The Court takes judicial notice of the existence of these filings, as they are "readily verifiable" and part of the public record, but not disputed facts contained in the filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The Court declines to take

## I. BACKGROUND

The Court assumes the parties' overall familiarity with the factual and procedural background of this case and Plaintiff's allegations, and provides a brief summary to contextualize its ruling. Plaintiff Lujunjin "Vivian" Liu[2] alleges that in July 2019, she entered into an agreement (the Advisor Agreement) with Fred Jin (Jin) and his company, Cere Network, Inc., to assist Jin with launching his cryptocurrency venture, the Cere Network. ECF No. 40 (FAC) ¶¶ 25-26. Per the Advisor Agreement, which Plaintiff attached as an exhibit to her FAC, she agreed to provide advising and consulting services in exchange for .2% of the total network of Jin's cryptocurrency tokens, called Cere Tokens. *Id.* ¶ 40. This was estimated to be about 20,000,000 tokens. *Id.* Plaintiff alleges that she performed her agreed-upon services pursuant to the Advisor Agreement, but that "Jin and his accomplices" refused to pay Plaintiff. *Id.* ¶¶ 41-43, 96-98. Plaintiff proceeded to sue Defendants for fraud, aiding and abetting fraud, violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, conspiracy to violate, negligent misrepresentation, breach of the Advisor Agreement, failure to pay wages and overtime, and civil theft. *See* ECF No. 40 (First Am. Compl.) (FAC) ¶¶ 102-57.

As relevant here, the Advisor Agreement at Paragraph 8 provides, "Any disputes concerning this agreement will be submitted to binding arbitration in San Francisco, California." ECF No. 40 at 43; *see* ECF No. 46-1 at 10. In her FAC, Plaintiff seeks a judicial determination that the arbitration provision in the Advisor Agreement is not valid and enforceable "due to fraud." *Id.* ¶¶ 158-61.

Defendants filed a petition to compel arbitration, arguing, among other things, that Plaintiff's Advisor Agreement included an arbitration provision and thus Plaintiff was required to arbitrate her claims. *See* ECF No. 43-1 at 5. Plaintiff opposed, arguing that Defendants had not met their burden of proving the existence of a valid arbitration agreement and Defendants lacked standing to compel arbitration. ECF No. 45. In support of her opposition, Plaintiff filed a

---

judicial notice of Defendants' Exhibits 3 and 4, as Defendnats have not explained how these documents reflecting actions by Cerebellum Network, Inc.'s board meet the requirements of Federal Rules of Evidence 201.

[2] Plaintiff Liu named Goopal Digital Limited as an additional plaintiff in the original complaint. ECF No. 1. She is now proceeding as the sole plaintiff.

declaration attesting that she received a draft of the Advisor Agreement in July 2019 that had been executed by Jin, as a representative of Cere Network, Inc. ECF No. 45-1 ¶ 5. She attests that she executed the Advisor Agreement on July 23, 2029, and it became "effective immediately," and that when she signed, she believed she would "receive compensation in the form of Cere Tokens" pursuant to the agreement. *Id.* ¶¶ 9-10. Plaintiff attests that she understood "Cere Network, Inc." to be the true name of the company she was agreeing to work for, that no one told her "Cerebellum Networks, Inc. was the true name of the company," and that everyone she worked with "referred to the company as 'Cere Network.'" *Id.* ¶ 8.

Defendants filed a reply in support of their petition, asserting that Plaintiff was equitably estopped from disclaiming the validity of the arbitration provision when her claims, as asserted in the FAC, relied on the validity of the Advisor Agreement. ECF No. 46. For the first time, they provided a declaration in support from Fred Jin, who attested that he served as the CEO of Defendant Cerebellum Network, Inc. in the timeframe at issue; he signed the Advisor Agreement in July 2019 on behalf of Cerebellum Network, Inc.; and that "we all" (presumably, referring to his employees) "used the terms 'Cerebellum' and 'Cere' interchangeably to refer to 'Cerebellum Network, Inc." ECF No. 46-1 ¶¶ 1, 4-5. To provide Plaintiff an opportunity to respond to Defendants' evidence filed with their reply brief, the Court directed Plaintiff to file a sur-reply, which she did. ECF Nos. 51, 52.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA) at 9 U.S.C.§ 2 provides that a written arbitration provision of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided . . . ." "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

agreement encompasses the dispute at issue." *Id.* If both conditions are met, the court must compel arbitration. *See id.* However, "[b]ecause an arbitration agreement is a contract like any other, it may 'be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021)). "State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

"[T]he party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In turn, the party opposing arbitration has the burden of proving that the arbitration agreement does not apply or is invalidated because of fraud, duress, unconscionability, or another generally applicable contract defense. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017); *Bernsley v. Barclays Bank Delaware*, 657 F. Supp. 3d 1327, 1333 (C.D. Cal. 2023).

In resolving motions to compel arbitration, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus courts "consider the substance of evidence that would be admissible at trial," even if the evidence is not presented in the motion to compel arbitration in a form that would be admissible at trial. *See S.S. ex rel. Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. 2021) (citing *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922-23 (D. Nev. 2019)); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

## III. ANALYSIS

Pursuant to the FAA, the Court's analysis is limited to two issues: First, does a valid agreement to arbitrate exist? If so, does the agreement to arbitrate encompass the claims at issue? *See Chiron*, 207 F.3d at 1130. These are addressed in turn.

### A. An Agreement to Arbitrate Exists

Defendants, as the party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson*, 771 F.3d at

565. As "[s]tate contract law controls whether the parties have agreed to arbitrate," California contract law applies here. *Id.* To form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement," typically through written or spoken word or conduct. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).

Defendants, albeit in their reply brief,[3] provide a declaration from Fred Jin attesting that he entered into the Advisor Agreement on behalf of his company Cerebellum Network, Inc. with Plaintiff in July 2019. *See* ECF No. 46-1 ¶¶ 3-5. The Advisor Agreement is attached as an exhibit to his declaration. *Id.* at 9-10. The Advisor Agreement includes the provision that all disputes concerning it would be submitted to binding arbitration. *Id.* at 10. In her opposition, Plaintiff attested that she executed the Advisor Agreement that had been signed by Jin, and that, pursuant to the terms of the contract, she provided her advising services to Jin and his cryptocurrency venture. *See* ECF No. 45-1 ¶¶ 9, 11. The Court is satisfied that Defendants have met their initial burden of proving the existence of the arbitration agreement contained within the Advisor Agreement. *See Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

The burden then shifts to Plaintiff to show that the arbitration provision is invalid. *See Poublon*, 846 F.3d at 1260. Plaintiff challenges the arbitration provision because the Advisor Agreement was signed by Fred Jin on behalf of Cere Network, Inc., instead of on behalf of Cerebellum Network, Inc. *See* ECF Nos. 46-1 at 9-10; 46 at 9-11. Plaintiff appears to contend that, as a result, the arbitration provision *only* (but not the Advisor Agreement as a whole) was induced by fraud. *See* ECF No. 52 at 2-3. Plaintiff argues that the entity named "Cere Network, Inc." is not a registered company, *see* ECF No. 45-2, and Defendants concede that "Cere Network, Inc." is an "informal shortening" of the name of Jin's company, Cerebellum Network, Inc. ECF No. 46 at 13-14. Jin attests that he signed the Advisor Agreement as Cerebellum Network, Inc.'s CEO on behalf of the company, that he never understood or intended to "execute any agreement

[3] "A district court does not abuse its discretion in considering new arguments or evidence if the opposing party had an opportunity to respond." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024). As the Court provided Plaintiff an opportunity to file a sur-reply, and Plaintiff did so, the Court properly considers the arguments and evidence first advanced and offered in Defendants' reply brief. ECF Nos. 51, 52.

United States District Court
Northern District of California

with anyone on behalf of a company that does not exist," and that his company used the terms "Cerebellum" and "Cere" interchangeably when referring to "Cerebellum Network, Inc." ECF No. 46-1 ¶¶ 2, 5. He further explains that Plaintiff's associate, Kenzi Wang, prepared the Advisor Agreement, and was responsible for putting down "Cere Network, Inc." rather than "Cerebellum Network, Inc." *Id.* ¶¶ 2-5. Plaintiff contends that "it was Jin's responsibility to properly review the contract" and ensure that it listed his company's correct name before executing it. ECF No. 52 at 3.

Finger-pointing aside, the Court is not convinced by Plaintiff's argument. First, California law does not require "that corporate parties to a contract use their full legal names," but "only that it be possible for a reasonable user to identify the parties to the contract." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 511 (9th Cir. 2023) (citing Cal. Civ. Code § 1558). Plaintiff entered into the contract with Jin to provide advising services to his company, and in her sur-reply does not dispute Jin referred to his company as "Cere Network, Inc.," or "Cere" as an informal shortening of Cerebellum Network, Inc. *See* ECF No. 52 at 2-3. Cerebellum Network, Inc.'s failure to use its "full legal name" in the Advisor Agreement is not dispositive of its—let alone the arbitration provision's—invalidity. *Oberstein*, 60 F.4th at 511.

Second, given that Plaintiff has sued to enforce the terms of the Advisor Agreement, *see* FAC ¶¶ 142-57, she is equitably estopped from simultaneously claiming that it is invalid because it did not use Jin's company's full legal name. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045 (9th Cir. 2009); *see Pattern Design LLC v. We are Sechey Inc.*, No. 24-cv-02604, 2024 WL 4369668, at *4 n.3 (N.D. Cal. Oct. 1, 2024). Plaintiff has sued to recover the 20 million Cere Tokens she claims are owed to her under the Advisor Agreement, which, as Defendants explain, "necessarily presupposes a real counterparty capable of owing contractual obligations and receiving contractual benefit." ECF No. 46 at 12. Plaintiff cannot have it both ways. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1133 (9th Cir. 2013) ("The linchpin for equitable estoppel is fairness.") (internal quotations omitted). She cannot both proceed with her claims based on a valid Advisor

Agreement and, at the same time, contend that a provision of that very same agreement is invalid for reasons that, if accepted, would invalidate the entirety of the agreement.

Somewhat separate from the issue of whether Plaintiff entered into an arbitration agreement is the issue of *which* Defendants may compel Plaintiff to arbitrate her claims. As discussed above, the Advisor Agreement was signed by Jin, on behalf of Cerebellum Network, Inc. *See* ECF No. 46-1 ¶¶ 4-5. The remaining Defendants are not parties to the Advisor Agreement. Generally speaking, nonsignatories to an arbitration agreement cannot compel arbitration. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). But "[a] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128. Because California's equitable estoppel law prohibits a party resisting arbitration from relying "on an agreement for one purpose while disavowing the arbitration clause of the agreement," a non-signatory to an arbitration agreement may compel arbitration of a signatory's claims when the claims against the non-signatory are "intertwined with the contract providing for arbitration." *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 866 (9th Cir. 2021); *Mundi*, 555 F.3d at 1229. That is, where a "plaintiff relies on the substantive terms of the agreement to assert a claim against a nonsignatory defendant," the plaintiff is estopped from disavowing "the arbitration clauses of those very agreements." *Yeh v. Superior Ct.*, 95 Cal. App. 5th 264, 273 (2023) (citing *Goldman v. KPMG, LLP*, 173 Cal.App.4th 209, 221 (2009)). Plaintiff's claims for breach of the Advisor Agreement and failure to pay wages against Jin, and her claim for civil theft against all Defendants, plainly rely on the terms of the Advisor Agreement.[4] Thus, all Defendants—not just Cerebellum Network, Inc.—may seek arbitration.

The Court accordingly concludes that a valid arbitration agreement exists and Defendants may properly move to compel arbitration.

---

[4] Plaintiff's civil theft claim is based on the allegations that Defendants failed to deliver 20 million Cere Tokens owed to Plaintiff. FAC ¶¶ 152-57. Plaintiff claims that she was owed the 20 million Cere Tokens pursuant to the Advisor Agreement. *See id.* ¶ 98 ("Under the Advisory Agreement, Liu was entitled to 20 million Cere Tokens.").

### B. Plaintiff's Claims Relating to the Advisor Agreement are Covered by the Arbitration Agreement

The Court next evaluates which of Plaintiff's claims are covered by the arbitration provision of the Advisor Agreement. *See Chiron*, 207 F.3d at 1130. "Because of the federal policy in favor of arbitration, ambiguities regarding the scope of arbitrable issues are to be resolved in favor of arbitration." *Boardman*, 822 F.3d at 1019. "[I]n cases containing both arbitrable and nonarbitrable claims," courts must "compel arbitration of arbitrable claims, when asked to do so, . . . even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

The arbitration provision provides, "Any disputes concerning this agreement will be submitted to binding arbitration in San Francisco, California." ECF No. 46-1 at 10. Defendants argue that all of Plaintiff's claims "concern" the Advisor Agreement, and are thus subject to arbitration. *See* ECF No. 43-1 at 11-12. As discussed above, Plaintiff's claims for breach of the Advisor Agreement, failure to pay wages and overtime, and civil theft are squarely related to the Advisor Agreement. FAC ¶¶ 143-147, 149-51, 152-57. Plaintiff effectively concedes that these three claims "depend on the terms of the Advisor Agreement," but argues that the "gravamen" of her remaining claims "focus on Defendants['] actions to perpetrate the scheme, conspiracy, and fraud." ECF No. 45 at 13. The Court determines that Plaintiffs' fraud, aiding and abetting fraud, and negligent misrepresentation claims concern the Advisor Agreement and thus must be arbitrated. Among other things, Plaintiff's fraud and misrepresentation claims assert that Plaintiff relied on and was consequently damaged by Jin's "material misrepresentations . . . including the Advisor Agreement" that she would receive compensation for her advising services. *See* FAC ¶¶ 103-04, 108. Given "the policy in favor of arbitration," the Court concludes that these claims sufficiently "concern" the Advisor Agreement. *Boardman*, 822 F.3d at 1019. However, Plaintiff's RICO claims appear predicated on Defendants' alleged transfer of Cere Tokens amongst themselves and their alleged "misrepresentations about enterprise traction, technology readiness, and profitability" of Cere Tokens and the Cere Network. FAC ¶¶ 68-85, 118. The Court declines to send these claims to arbitration.

**C. The Case is Stayed Pending Arbitration**

Courts must "stay litigation of arbitrable claims pending arbitration of those claims." *Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011); *see* 9 U.S.C. § 3. It is a matter of the court's discretion to decide whether to entirely stay litigation pending the outcome of arbitration when a case involves both arbitrable and non-arbitrable claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23 (1983); *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985). As the Court has determined that the majority of Plaintiff's claims fall under the scope of the arbitration agreement, these claims must be stayed. Additionally, because Plaintiff's remaining claims are intermeshed with the arbitrable claims, the Court concludes that it will be most efficient—and reduce the risk of inconsistent judgments between this Court and the arbitrator—to stay the entirety of this action. *See BrowserCam, Inc. v. Gomez, Inc.*, No. C 08-02959 WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) ("It is, however, within a district court's discretion whether to stay, for considerations of economy and efficiency, an entire action, including issues not arbitrable, pending arbitration.") (cleaned up).

Accordingly, this matter is STAYED in its entirety pending arbitration of Plaintiff's claims.

**D. The Court Retains Jurisdiction Over the Matter**

During the hearing on the motion to compel arbitration, Plaintiff's counsel requested that, in the event the Court find that some or all of Plaintiff's claims are arbitrable and stay the proceeding, the Court retain jurisdiction over the case in the event the parties have disputes about how to select an arbitrator. The Court will do so. Although the case will be stayed, it will not be closed, and the parties may raise disputes regarding the procedures for initiating arbitration, and the Court will consider whether it is permissible to resolve those procedural disputes. The Court will also require the parties to file periodic status reports updating the Court about their progress in arbitration proceedings. The September 24, 2026 Case Management Conference is VACATED.

//

//

The parties shall file a joint status report by March 22, 2027, and every six months thereafter until the case closes.

**IT IS SO ORDERED.**

Dated: September 22, 2026



LISA J. CISNEROS
United States Magistrate Judge